IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 499-001-1 |
| | * | |
| TERRELL GAULDEN | * | |

**O R D E R**

Defendant Terrell Gaulden, through counsel, has moved for early release pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. Upon due consideration of the parties' submissions, including Defendant's inmate medical records, and the relevant law, the Court grants Defendant's request for relief.

**I.  BACKGROUND**

Terrell Gaulden and his twin brother and co-defendant Derrell Gaulden distributed substantial quantities of cocaine, particularly crack cocaine, in the rural area of Hinesville, Georgia in this district in the mid-1990s. The drug operation also involved guns and violence: the Gaulden brothers hired their co-defendant, Joseph Jones, to kill Raymond Dent, an individual who reportedly stole cocaine from them. Jones shot at the mobile home that Dent and others occupied at least five times. Luckily,

no one was injured. Of note, a few weeks after this incident, Dent shot into Terrell Gaulden's home and struck him in the leg. Suffice to say, in the late 1990s, the Gaulden brothers were serious and violent offenders, and the community at large was not safe with them in it.

Ultimately, Terrell Gaulden was convicted by a federal jury in 1999 on multiple counts of distribution of cocaine base ("crack cocaine"); one count of possession with intent to distribute cocaine hydrochloride; one count of carrying a firearm during and in relation to a drug trafficking crime; two counts of possession of firearm by a convicted felon; and one count of drive by shooting. At sentencing on July 21, 1999, Terrell Gaulden's guideline range was determined to be 292 to 365 months imprisonment. The Honorable B. Avant Edenfield sentenced him to serve 365 months plus a consecutive term of 60 months for the 18 U.S.C. § 924(c) firearm conviction, for a total term of 425 months.

On four prior occasions, Terrell Gaulden has sought a sentence reduction based upon sentencing changes to crimes involving crack cocaine. Indeed, Terrell Gaulden's guideline range has been lowered to 151 to 188 months, plus the sixty-month consecutive sentence for the § 924(c) conviction.[1] This Court, through three

---

[1] Also, the Fair Sentencing Act of 2018 reduced the statutory minimum and maximum sentences of five to forty years to a maximum of twenty years on six of Terrell Gaulden's seven convictions involving crack cocaine. However, because Count 10 involved a

2

different district judges including the undersigned, denied the motions upon consideration of the sentencing factors in 18 U.S.C. § 3553(a). The Court pointed to the magnitude of the drug operation and the attendant violence and recklessness of the defendant as grounds for denying the requested reduction in sentence. (See Order of Sept. 9, 2008 (Edenfield, J.), Doc. 258; Order of Mar. 6, 2012 (Edenfield, J.), Doc. 301; Order of Sept. 8, 2015 (Bowen, J.), Doc. 407; Order of July 17, 2019 (Hall, C.J.), Doc. 441.)

At present, Terrell Gaulden, who is 50 years old and has served 23 years in prison, has a projected release date of May 24, 2029. He has filed his compassionate release motion based upon a serious medical condition called sarcoidosis. "Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of [the] body - most commonly the lungs and lymph nodes. But it can also affect the eyes, skin, heart and other organs." *Sarcoidosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-condition/sarcoidosis/symptoms-causes/syc-20350358 (last visited on July 6, 2022).

---

purchase of 30.2 grams of crack cocaine, the statutory penalty remains five to forty years for this count. (See Order of July 17, 2019, Doc. 441.)

3

## II. DISCUSSION

The compassionate release provision imposes three conditions on granting a sentence reduction: the existence of extraordinary and compelling circumstances, adherence to the applicable Policy Statement found in U.S.S.G. § 1B1.13 (including a finding that the defendant is not a danger to the community), and support in the consideration of the sentencing factors of 18 U.S.C. § 3553(a). United States v. Tinker, 14 F.4th 1234, 1237-38 (11th Cir. 2021). Absence of even one of these requirements would foreclose a sentence reduction. Id.; United States v. Giron, 15 F.4th 1343, 1348 (11th Cir. 2021) ("[C]ompassionate release is permissible only if all three findings are made."). It is Defendant's burden to show that his circumstances warrant a reduction. See United States v. Granda, 852 F. App'x 442, 446 (11th Cir. 2021).

The applicable Policy Statement, § 1B1.13, provides three specific categories of "extraordinary and compelling reasons" to grant relief: medical, age, and family circumstances. U.S.S.G. § 1B1.13 & n.1(A)-(C). A fourth catch-all category provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. Id. n.1(D).[2]

---

[2] The Eleventh Circuit Court of Appeals has held that district courts are bound by the definition of "extraordinary and

4

In this case, Defendant contends that his serious medical condition qualifies him for relief. The commentary to § 1B1.13 provides that a medical condition qualifies as sufficiently serious if:

> i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . . [or]
>
> ii) The defendant is–
>
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). Through his motion, Defendant contends that his sarcoidosis presents an extraordinary and compelling circumstance warranting release.

Defendant was diagnosed with sarcoidosis in 2009 while in prison. According to the expert declaration[3] of Dr. Alice Jiang,

---

compelling" set forth in Policy Statement § 1B1.13 and its application note. United States v. Bryant, 996 F.3d 1243 (11th Cir. 2021), cert. denied, 142 S. Ct. 583 (2021). Thus, the Court does not have discretion to consider other circumstances.

[3] Based upon her qualifications and without objection from the Government, the Court finds Dr. Jiang is a qualified expert in internal medicine experienced in the particulars of the medical condition sarcoidosis.

5

an internal medicine resident physician, sarcoidosis may trigger inflammatory response which causes granulomas, or collections of immune cells, to form in various organs. (Def.'s Mot., Doc. 487, Ex. 1, Decl. of Dr. Alice Jiang, ¶ 7.) Dr. Jiang reviewed medical records from 2009 to 2020 wherein she learned that Defendant was diagnosed with sarcoidosis when granulomas were discovered in his lungs during a two-week hospital stay in 2009. (Id. ¶¶ 3, 7, 9.) At the time, Defendant had been suffering from weight loss, swollen lymph nodes, and a rash. (Id. ¶ 9.) His chest imaging demonstrated extensive upper lobe reticular infiltrates, and his liver enzymes were elevated. (Id.) Defendant was treated with oral steroids that improved his pulmonary symptoms until the medication was stopped in 2014. (Id.)

Defendant presently claims that the sarcoidosis has affected his ability to breathe deeply. (Def.'s Mot., Ex. 3, Decl. of Terrell Gaulden, ¶ 8.) He claims his eyes are "producing a white film," but he has not been to an eye doctor in many years. (Id. ¶ 9.) Defendant also has a rash on his legs and has been losing weight involuntarily. (Id.) Defendant complains that he has not been seen by a doctor since March 2020. (Id. ¶ 11.) According to Dr. Jiang, this is problematic because once a diagnosis of sarcoidosis is made, a patient should undergo systematic review of symptoms and have basic screenings to ensure no additional organ

involvement. (Jiang Decl. ¶ 10.) For instance, a patient should have an EKG to evaluate for irregular heart rhythms, an eye evaluation to exclude retinal involvement, and creatinine and alkaline phosphatase level test to evaluate for kidney and liver involvement. (Id.)

Dr. Jiang states that Defendant's difficulty in breathing suggests a recent sarcoidosis flare that requires further evaluation. (Id. ¶ 12.) If left untreated, his pulmonary sarcoid could progress, leading to worsening lung involvement and respiratory distress or failure. (Id. ¶ 14.) Dr. Jiang points to Defendant's eye problems and persistent rash as possibly related to sarcoidosis. (Id. ¶¶ 17 & 20.) She also is concerned that an enlarged spleen detected from a CT scan in 2018 is related to sarcoidosis and requires further evaluation. (Id. ¶ 19.) Finally, Dr. Jiang discusses the potential adverse effects that COVID-19 could have on Defendant and his various other medical conditions.[4] (Id. ¶¶ 22-31.) Dr. Jiang's expert declaration is a thorough explanation of potential complications, or in her words "risk of progression," from sarcoidosis.

---

[4] Defendant also suffers from prediabetes, gastroesophageal reflux, varicose veins, vitamin D deficiency, tooth decay, and a prior gunshot wound that allegedly exacerbates the leg rash in conjunction with the sarcoidosis.

7

The Government highlights Defendant's most recent medical record (January 11, 2022) which states that he did not have a cough or shortness of breath. (Gov't Resp. in Opp'n, Doc. 490, Ex. B at 5.) Moreover, in records from December 2020 (presumably records that Dr. Jiang reviewed), Defendant denied a cough or breathing problems, and his chest x-ray showed he had no acute cardiopulmonary disease and the areas outside of the scar tissue in his lungs were clear. (Def.'s Resp. in Opp'n, Ex. A at 1 & 25.)

What the Government does not discuss in its brief is the glaring absence of monitoring that is required in a sarcoidosis patient. Because sarcoidosis is a chronic disease, regular evaluation is required to ensure no new organ development. (Jiang Decl. ¶ 15.) For instance, Defendant has not received regular monitoring from a pulmonologist for his lungs since 2018. (Id. ¶ 13.) He has not received the oral steroids since 2014. Defendant's eyes have been burning with a milky discharge, but he has not received an eye evaluation since 2012 despite the fact that if left untreated, sarcoid involvement in the eye could cause blindness. (Id. ¶ 17.) Defendant's creatinine and alkaline phosphatase level was high in July 2017 and again in March 2018, yet no further evaluation or testing was completed to determine if there is sarcoid involvement in his liver. (Id. ¶ 18.) In February 2018, Defendant's CT scan revealed an enlarged spleen, but this

aspect has not been further evaluated. (Id. ¶ 19.) Finally, Defendant has a persistent rash on his leg which could be sarcoid related but it remains untreated except with steroid and antifungal creams that have minimally abated the condition. (Id. ¶ 20.) The only medical treatment that Defendant has had in the last two years is a tooth extraction and a COVID vaccination. The highlighted medical record of January 11, 2022 is only a COVID screening.

Based upon the medical records and the expert opinion of Dr. Jiang, the Court concludes that the Bureau of Prisons has done very little to monitor and evaluate this inmate with a serious and chronic condition, and this failure could have dire consequences.[5] Defendant's lungs are already scarred from his previous bout with sarcoidosis flare-ups. Also, the contraction of COVID-19 could cause severe inflammation in his lungs and impose a punishment beyond an appropriate societal response to his crimes.[6] In short, Defendant is unable to seek his own medical care in the prison setting (in which he is at significant risk of contracting COVID-

---

[5] According to Dr. Jiang, Defendant also has not had any follow-up from his diagnosis of prediabetes in 2017. She is also critical of the lack of follow-up care and evaluation of Defendant's dysphagia (difficulty swallowing), his varicose veins, and his tooth decay. (Jiang Decl. ¶¶ 23-27.)

[6] The Court recognizes that Defendant has been vaccinated against COVID-19, but that was over a year ago. Moreover, the vaccine is not an immunity shield, and Defendant is uniquely positioned to suffer greatly should he contract it.

9

19), and the prison is unable or unwilling to provide the necessary medical monitoring and treatment. As stated by a sister district court, a prisoner's "ability to provide self-care within the environment of the correctional facility is diminished" if he does not "receive[] necessary medical follow up and treatment for his ongoing health issues while incarcerated." United States v. Morse, 2020 WL 6534899, at *3 (S.D. Fla. Nov. 3, 2020.) Thus, under the unique circumstances of this case, Defendant's serious medical condition constitutes an extraordinary and compelling reason for early release.

Having so found, the Court must now consider the § 3553(a) factors and determine whether Defendant is a danger to the community. As discussed above, the Court is well aware that Defendant was a violent offender when he was sentenced. Defendant, however, has spent 23 years in prison, a sentence that he would not face if he was convicted today.[7] His prison record demonstrates that he is an excellent and consistent worker. According to a former Warden at three federal prisons, his work record shows that he had "coveted and trusted" work assignments for which he was hand-picked by staff. (Def.'s Mot., Ex. 5, Decl. of Maureen P. Baird, ¶¶ 25-26.) Defendant's supervisor describes

---

[7] If sentenced today, Defendant would have a guideline range of 151 to 188 months in prison, plus 60 months for the §924(c) count, for a total maximum sentence of 248 months. Defendant has served approximately 282 months now.

10

him in a letter as "a strong asset," "a quick learner," and "a hard worker"; he adds that "[t]here is nothing that we have tasked [Defendant] with that he has not mastered." (Def.'s Mot., Ex. 6, Letter from Darryl D. Thomas.) Defendant's educational and vocational record is impressive in its variety and continuity. During his incarceration, Defendant has had only four disciplinary infractions (two of which were over 15 years ago), none involving violence or drugs. Defendant has moved from a high security classification to now serving in a low security facility. In Warden Baird's experience, the downgraded security level is "based on [Defendant's] positive institution conduct, his demonstrated level of responsibility, and his positive programming initiatives." (Baird Decl. ¶ 15.) And, the BOP has now assessed Defendant's recidivism level as "low risk." (Def.'s Mot., Ex. 4.) In short, Defendant has demonstrated a remarkable rehabilitation. The Court finds that Defendant no longer poses a danger to the community. Indeed, Defendant's disease may hinder any future possibility of criminal involvement; his five-year term of supervised release will also deter the risk of reoffending. In conclusion, the Court finds the § 3553(a) factors now weigh in Defendant's favor including the more recent characteristics and history of Defendant and the sentence already served provides just punishment, promotes respect for the law, and affords adequate deterrence.

Upon the foregoing, and after thorough and careful consideration of the benevolent purpose behind 18 U.S.C. § 3582(c)(1)(A), Defendant Terrell Gaulden's motion for compassionate release (doc. no. 487) is **GRANTED**. The Court hereby reduces Defendant Gaulden's term of imprisonment to **TIME SERVED** plus 21 days. This additional time will allow the Bureau of Prisons, the United States Probation Office, and Defendant Gaulden to make appropriate plans for his release from a long-served prison sentence.[8] Upon release, Defendant Gaulden will begin a five-year term of supervised release, subject to the mandatory and standard conditions of supervised release as shall be explained by the United States Probation Office of the Southern District of Georgia. Defendant Gaulden shall contact the Probation Office within 72 hours of his release.

**ORDER ENTERED** at Augusta, Georgia, this 19th day of July, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[8] Defendant Gaulden intends to return to his supportive family, including a fiancée, in Hinesville, Georgia. (See Letters of Support, Def.'s Mot., Ex. 7.) Thus, he will be supervised in this district.

12